# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| JUDY A. NETTEN,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | No. C05-4095-MWB<br><br>**REPORT AND RECOMMENDATION** |

_____

## *I. INTRODUCTION*

The plaintiff Judy A. Netten ("Netten") appeals a decision by an administrative law judge ("ALJ") denying her application for Title II disability insurance ("DI") benefits. Netten claims the ALJ erred in finding she performed substantial gainful activity as a self-employed individual. (*See* Doc. Nos. 7 & 9)

## *II. PROCEDURAL AND FACTUAL BACKGROUND*
### *A. Procedural Background*

On February 14, 2002, Netten filed an application for DI benefits, alleging a disability onset date of August 1, 1986. (R. 59-61) Netten claims she is disabled due to bipolar disorder. On her Disability Report, Netten stated her condition does not prevent her from working, "but the bipolar ups and downs cause [her] to be behind on [her] bookwork and [her] usual chores." (R. 73) She stated she has a poor attention span, but she believes "[t]he Lord will enable [her] to overcome this problem if [she] take[s] it one day at a time." (*Id.*) Netten's application was denied initially and on reconsideration. (R. 26-30, 32-34)

Netten requested a hearing (R. 35), and a hearing was held before ALJ Robert K. Rogers on March 9, 2004. (R. 439-79) Netten was represented at the hearing by attorney Harold D. Dawson. Witnesses at the hearing included Netten; her two sisters, Karen Koenders and Patricia Plucker; Dr. Gary Guard, a medical expert; and Richard Auspander, a Vocational Expert ("VE").

On May 20, 2004, the ALJ ruled Netten was not entitled to benefits. (R. 14-21) Netten appealed the ALJ's ruling, and on May 27, 2005, the Appeals Council denied Netten's request for review (R. 6-9), making the ALJ's decision the final decision of the Commissioner.

Netten filed a timely Complaint in this court, seeking judicial review of the ALJ's ruling. (Doc. No. 3) In accordance with Administrative Order #1447, dated September 20, 1999, this matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), for the filing of a report and recommended disposition of Netten's claim. Netten filed a brief supporting her claim on November 7, 2005. (Doc. No. 7) The Commissioner filed a responsive brief on December 22, 2005. (Doc. No. 8) Netten filed a reply brief on January 3, 2006. (Doc. No. 9) The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Netten's claim for benefits.

### B. *Factual Background*

1. *Framing the issue under review*

The sole issue before the court in this judicial review is whether Netten's work activity following her alleged disability onset date constituted "substantial gainful activity" for purposes of the applicable regulations. The ALJ stopped his evaluation at the first step of the sequential evaluation process because he found Netten's Mary Kay Cosmetics home

sales business constituted substantial gainful activity. (*See* R. 18-20) Netten disagrees, and argues her home sales business did not reach the level of substantial gainful activity.

Because this is the only issue currently before the court, the undersigned will not engage in a detailed review of the entire record. For example, although a medical expert and a vocational expert testified at the ALJ hearing, the ALJ did not consider their testimony because he stopped his evaluation at step one; thus, their hearing testimony is not relevant to the current review. The court will focus on the evidence of record that is relevant to the issue of whether Netten's Mary Kay Cosmetics business constitutes substantial gainful activity.

## 2. *Introductory facts and hearing testimony*

Netten was born in 1954, making her fifty years old at the time of the ALJ hearing. She finished high school and three months of clerical courses after high school. Netten last worked outside her home doing some surveys in 1999. In 2003, she worked for about three months doing an unspecified type of work for an elderly couple. She also sometimes helps an elderly lady with small tasks, such as addressing Christmas cards. (R. 443-44)

Netten testified she has two types of home sales businesses, one selling Mary Kay Cosmetics and one selling Stanley Home Products.[1] She began working as a Mary Kay consultant in 1978, and is the sole owner of her Mary Kay business. (*See* R. 19) She spends an average of thirty hours per month on the business, doing direct one-on-one sales to customers, and occasionally presenting classes or home demonstrations.

The Vocational Expert testified Netten's Mary Kay business would be classified as "sales person, cosmetic and toiletries," which is light duty, semi-skilled work, and also as "sales representative, door-to-door," which is light duty work. (R. 475-76)

---

[1]Netten spends only about five hours per month on the Stanley Home Products business, and the ALJ found that business does not constitute substantial gainful activity. (*See* R. 19)

Netten's sister, Karen Koenders, testified she has observed Netten working in her Mary Kay business. According to Koenders, Netten is very disorganized, has difficulty concentrating on anything or completing a thought during conversations, and has difficulty taking care of her house and her business. (R. 466-68) Koenders noted that on two occasions between 2002 and 2004, Netten gave customers products to try and did not seem to care if she was paid for the products. She also stated Netten had told her that people owed her money, but Netten never followed through with collecting the money. (R. 468)

None of the other hearing testimony is relevant to the issue under review here.

### 3. *Netten's financial history*

The record indicates that since her alleged disability onset date, Netten reported the following annual income from self-employment:

| Year | Income |
|---|---|
| 1987 | .00 |
| 1988 | .00 |
| 1989 | .00 |
| 1990 | 2,794.00 |
| 1991 | 1,635.00 |
| 1992 | 3,123.00 |
| 1993 | 3,342.00 |
| 1994 | .00 |
| 1995 | .00 |
| 1996 | 1,437.00 |
| 1997 | 2,176.00 |
| 1998-2003 | .00 |

(R. 67) From 1982 through 1986, Netten's reported earnings were from employment at an insurance company. (*See* R. 63) Although the record contains Netten's annual reported earnings for the years 1972 through 1982, there is nothing in the record to indicate the source of her earnings for those years.

Netten's income tax returns from 1999 through 2003 show the following information regarding her self-employment activities:

In 1999, Netten had gross sales of $15,547.00. Less cost of goods sold of $6,363.00, and after adding in $501.00 of "other income," she had gross income of $9,685.00. She reported auto expenses of $6,366, and reported driving her vehicle 20,290 miles for business purposes. She reported other expenses totaling $4,312.00, for total expenses of $10,678.00, resulting in a net loss for the year of $993.00. (R. 121-22)

In 2000, Netten had gross sales of $14,804.00. Less cost of goods sold of $6,429.00, she had gross income of $8,375.00. She reported auto expenses of $4,045.00, and reported driving her vehicle 12,445 miles for business purposes. She reported other expenses totaling $3,985.00, for total expenses of $8,030.00, resulting in net profit for the year of $345.00. (R. 123-24)

In 2001, Netten had gross sales of $12,018.00. Less cost of goods sold of $6,184.00 and returns of $72.00, and after adding in $1,097.00 of "other income," she had gross income of $6,859.00. She reported auto expenses of $3,677.00, and reported driving her vehicle 10,667 miles for business purposes. She reported other expenses totaling $3,971.00, for total expenses of $7,648.00, resulting in a net loss for the year of $789.00. (R. 125-26)

In 2002, Netten had gross sales of $12,250.00. Less cost of goods sold of $6,647.00, she had gross income of $5,603.00. She reported auto expenses of $3,695.00, and reported driving her vehicle 10,122 miles for business purposes. She reported other expenses totaling $3,882.00, for total expenses of $7,577.00, resulting in a net loss of $1,974.00. (R. 127-28)

In 2003, Netten had gross sales of $11,642.00. Less cost of goods sold of $5,582.00, and after adding in "other income" of $46.00, she had gross income of $6,106.00. She reported auto expenses of $3,842.00, and reported driving her vehicle 10,673 miles for business purposes. She reported other expenses totaling $4,520.00, for total expenses of $8,362.00, resulting in a net loss of $2,256.00. (R. 129-30)

### *4. The ALJ's decision*

The ALJ determined the work Netten performed in her Mary Kay business and the comparability of her services to those of unimpaired individuals in the same community "were commensurate with substantial gainful activity." (R. 20) The ALJ supported this determination with the following analysis:

> The record documents that the claimant averages around $10,000-$12,000 per year in sales. These figures connote ongoing businesses in which the claimant actively participates despite IRS Schedule C forms which show very little profit, even losses, when all various expenses are considered.
>
> The claimant's performance of significant services must now be considered in terms of comparability of work and worth of work. The claimant reported one of her large expenses as operation of a vehicle, averaging over 10,000 miles per year. For analysis purposes, if all the claimant's driving were done at 60 mph average, she would have to drive 166 hours per year, or 13.88 hours per month. Generally, around-town cosmetic sales would likely be at much slower speeds, and therefore much more time would be devoted to driving. In addition to time spent driving, the claimant spends some time each month on actual sales. When considering both driving and actual sales, it certainly brings the time spent by the claimant to above the minimal hours per month to find substantial gainful activity for a person in a sole ownership situation. I note that all time devoted to a one person business is considered substantial. Hence, it must be found that the work and comparability of the claimant's services were commensurate with substantial gainful activity, and as such services were clearly worth the monetary amounts listed in the earning's [sic] guidelines at all times from the inception of the business in 1978 through the present.
>
> There is no evidence of record to suggest (either in the form of direct testimony or submitted evidence) that the claimant had any special considerations, subsidies or impairment-related work expenses which would have substantially reduced her "worth" or "comparable work" below the average monthly

> guidelines for substantial gainful activity. Accordingly, the claimant's work activity constitutes substantial gainful activity as a self-employed person through the present. The fact that the claimant did not yield a profit does not negate the fact that she actively runs a business in anticipation of pay or profit; and that her efforts are comparable to other individuals in the same line of work (home cosmetic sales) who are unimpaired. In addition the evidence indicates that her time spent and income derived have been pretty much the same since the business's beginning.

(*Id.*)

The ALJ therefore found Netten was not disabled at any time through the date of his decision.

## III. APPLICABLE LAW

### A. *Standard of Review*

#### 1. *The Substantial Evidence standard*

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003); *Banks v. Massanari*, 258 F.3d 820, 823 (8th Cir. 2001) (citing *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)); *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000) (citing 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to

support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline, supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse

the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *Baldwin*, 349 F.3d at 555 (citing *Grebenick v. Chater*, 121 F.3d 1193, 1198 (8th Cir. 1997)); *Young*, 221 F.3d at 1068; *see Pearsall*, 274 F.3d at 1217; *Gowell*, 242 F.3d at 796; *Spradling v. Chater*, 126 F.3d 1072, 1074 (8th Cir. 1997).

## *2.  The Sequential Evaluation Process*

Section 423(d) of the Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520 & 416.920; *Goff v. Barnhart*, 421 F.3d 785 (8th Cir. 2005); *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *Kelley v. Callahan*, 133 F.3d 583, 587-88 (8th Cir. 1998) (citing *Ingram v. Chater*, 107 F.3d 598, 600 (8th Cir. 1997)). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(4)(i).

If the claimant is not engaged in substantial gainful activity, then the Commissioner proceeds through the sequential evaluation process, determining whether the claimant has a severe impairment that substantially limits the ability to work, the medical severity of such impairment, the claimant's residual functional capacity, and the existence of work the claimant can perform. *See* 20 C.F.R. §§ 404.1520 & 416.920. In the present case, because the ALJ determined Netten was engaged in substantial gainful activity, the ALJ stopped his analysis after the first step of the evaluation process.

### 3. *Regulatory Guidelines and the Commissioner's Position*

The regulations explain in detail how the Commissioner will determine whether a self-employed individual is engaged in substantial gainful activity. Substantial gainful activity is defined as work activity, done for pay or profit (even if no profit is realized), that involves performing significant physical or mental activities. "Work may be substantial even if it is part-time or the individual does less or earns less than when working previously." *Britton v. Sullivan*, 908 F.2d 328, 333 (8th Cir. 1990) (citing 20 C.F.R. § 404.1572(a) (1989)).

The regulations provide that an individual's self-employment activity will be evaluated based on the value of the claimant's services to the business, regardless of whether the claimant receives an immediate income for those services. The regulations specifically provide that an individual's income will not be considered alone because the amount of income the individual actually receives may depend on a number of different factors. 20 C.F.R. § 404.1575(a).

The regulations set forth the standard that will be used to evaluate whether a self-employed claimant has engaged in substantial gainful activity. In pertinent part, the regulations regarding evaluation of self-employment activity provide as follows:

> We determine whether you have engaged in substantial gainful
> activity by applying three tests. If you have not engaged in

substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:

(1) Test One: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.

(2) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.

(3) Test Three. You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

(b) What we mean by significant services.

(1) If you are not a farm landlord and you operate a business entirely by yourself, any services that you render are significant to the business. . . .

. . .

(c) What we mean by substantial income. We deduct your normal business expenses from your gross income to determine net income. Once we determine your net income, we deduct the reasonable value of any significant amount of unpaid help furnished by your spouse, children, or others. Miscellaneous duties that ordinarily would not have commercial value would not be considered significant. . . . That part of your income remaining after we have made all applicable deductions represents the actual value of work performed. The resulting amount is the amount we use to determine if you have done substantial gainful activity. We will generally

> average your income for comparison with the earnings guidelines in §§ 404.1574(b)(2) and 404.1574(b)(3). . . . We will consider this amount to be substantial if –
>
> (1) It averages more than the amounts described in § 404.1574(b)(2); or
>
> (2) It averages less than the amounts described in § 404.1574(b)(2) but it is either comparable to what it was before you became seriously impaired if we had not considered your earnings or is comparable to that of unimpaired self-employed persons in your community who are in the same or a similar business as their means of livelihood.

20 C.F.R. § 404.1575.

The Social Security Administration refers to the first test as the "Significant Services and Substantial Income" test. The second and third tests are referred to as the "Comparability of Work and Worth of Work" tests. *See* SSR 83-34, 1983 WL 31256 (discussing applicability of the three tests in detail, providing examples).

In her brief, the Commissioner interprets the ALJ's decision as finding Netten performed substantial gainful activity based on Test Three. The Commissioner bases her analysis on whether Netten rendered services that "were clearly worth the monetary amounts liste[d] in the earnings guidelines." (Doc. No. 8, p. 7, citing R. 20) The applicable earnings guidelines provide that for the years 1986 through 1989, earnings averaging more than $300 per month constituted substantial gainful activity. From January 1990 through June 1999, the applicable monthly amount was $500, and from July 1999 through December 2000, the applicable monthly amount was $700. 20 C.F.R. § 404.1574(b); *see* Doc. No. 8, p. 5.

## IV. ANALYSIS

The court finds the record does not contain substantial evidence to support the ALJ's determination that Netten's services to her business were "clearly worth the

monetary amounts listed in the earning's [sic] guidelines at all times from the inception of the business in 1978 through the present." (R. 20) There is *no evidence* in the record concerning the amounts Netten made from self-employment for the years 1978 through 1986. The only evidence of record for the period following 1986 is Netten's income tax returns for the years 1999 through 2003. Considering lawfully-allowable deductions, Netten's income for those years did not meet the earnings requirements set forth in the regulations. Similarly, the record contains *no evidence* of what a comparable, unimpaired individual would earn, or what an employer would pay to an employee to do the work Netten was doing. The court is unwilling to make critical factual assumptions regarding matters that are completely absent from the record. *Cf. Petersen v. Chater*, 72 F.3d 675 (8th Cir. 1995) (noting similar deficiencies in the administrative record). Here, as in *Petersen*, the parties developed the administrative record primarily on the medical issues, not the financial ones. The court finds it was error for the ALJ to determine, on this record, that Netten was engaged in substantial gainful activity, and for him to stop his evaluation at step one of the sequential evaluation process.

The court therefore recommends the case be remanded for further development of the record on the issue of whether Netten was engaged in substantial gainful activity, or alternatively, for a finding that she was not so engaged, and continued evaluation of her disability claim through the remaining steps of the sequential evaluation process.

## V. CONCLUSION

Accordingly, **IT IS RESPECTFULLY RECOMMENDED**, for the reasons discussed above, unless any party files objections[2] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1) and Fed. R. Civ. P. 72(b), within ten (10) days of the service of a copy of this Report and Recommendation, that the Commissioner's decision be reversed and this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

**IT IS SO ORDERED.**

**DATED** this 12th day of May, 2006.

*[signature]*

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[2]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).